[Civ. No. 4035.  First Appellate District, Division Two.—December 5, 1921.]

## J. D. CLAYTON et al., Respondents, v. RANDOLPH MARKETING COMPANY (a Corporation), Appellant.

[1] CONTRACT—COMMISSION ON SALES OF FARM PRODUCTS—DESTINATION SALES—CONSTRUCTION OF INSTRUMENT.—Under a contract providing for the payment of a commission of "20% of the net f. o. b. destination sales" of certain farm products which the defendant was to market for the plaintiffs, the former was not entitled to the commission on gross sales, but on sales after deducting freight.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry B. Stewart, Guy L. Rockwell and LeRoy M. Edwards for Appellant.

C. L. Brown for Respondents.

STURTEVANT, J.—The plaintiffs sued the defendant for an accounting; the trial court awarded the plaintiffs a judgment for $4,882.13, and the defendant has appealed. The trial court tried the case sitting without a jury, and made findings in which it found that the defendant was a

corporation; that on September 20, 1918, the plaintiffs and defendant entered into a written contract which is fully set forth in plaintiffs' complaint; that the plaintiffs have fully performed said contract; that in doing so the plaintiffs delivered to the defendant to be marketed sixty-five carloads and some broken lots of lettuce; that the defendant received the produce and sold the same for $69,470.98 on board the cars at the place of sale; that the defendant paid freight and expressage in the sum of $15,736.63; that the defendant paid expressage for sundry items in the sum of $65.75; demurrage, $32.36; refrigeration, $175; taxes, $237.30; and that the net sale price on board the cars at point of delivery was $53,223.94. The court also found that the defendant had advanced to the plaintiffs $37,697.03, and that it was entitled to a commission of twenty per cent on the net sales or in the sum of $10,644.79. Deducting the advances and the commission from the net sales item above stated, the difference is $4,882.12, the amount for which the judgment was ordered. This controversy involves the correct interpretation of the meaning of the contract in so far as it provides for the payment by the plaintiffs to the defendant of a commission. The contract is quite long and it is sufficient for the purposes of the decision in this case to state that the provisions concerning the commission are contained in a paragraph worded as follows: "That for a consideration mentioned in paragraph four of this agreement the growers hereby appoint the distributor their exclusive agent for selling and distributing all lettuce and spinach owned, grown, or controlled by the growers, for the seasons of 1918 and 1919, upon a commission of 20% for the net f. o. b. destination sales of all lettuce and spinach delivered to and accepted for shipment at Brawley, California, . . ." The dispute between the parties is whether under the above passage the defendant was authorized to compute a commission of twenty per cent on the sales price at the point of destination after deducting freight, or whether it should have computed the commission on the sales price at that point without deducting freight. The contract was written by the defendant and in case of uncertainty not removed by sections 1635–1653 of the Civil Code, the language should be interpreted most strongly against the defendant. (Civ. Code, sec. 1654.) When the defendant answered it annexed

to its answer a document which it called a balance-sheet. That balance-sheet shows the defendant's claim as to its rights with reference to each particular carload. As stated above there were sixty-five carloads. As to thirty-three of these carloads no freight is charged—apparently the contents of the car were sold subject to the freight being paid by the purchaser; as to twelve of the cars charges were made for such items as detention, demurrage, brokerage, and cartage; where freight, refrigeration, and cartage were incurred, as on the first item, the defendant sought to charge commission on the gross sales price $1,513.35; where a carload was sold without incurring any of those expenses, as on the second shipment, the defendant sought to charge a commission on the sales price $685; a similar practice was followed with reference to other shipments from the tenth day of February, 1919, the date of the first shipment, until the fifth day of April, 1919, the date of the last shipment. It is claimed by the defendant that it was authorized to base its commission on the gross sales price at the point of destination because it was negotiating and attending to sales in large amounts, and was advancing moneys to finance the transactions. But this same claim could be made, with force less in degree only, with reference to the second car on which the defendant did not advance the freight. If the appellant is right in the contention which it made in the lower court, that its commission should be based on the wholesale price, including freight, such contention has its support in this: that the freight item was inserted to augment the commission. But if the parties were seeking to augment the commission, it should have been augmented by the amount of the freight whether the freight was paid by the defendant or the purchaser. Certainly no one would claim that twenty per cent was to be allowed as interest for a few days on the freight moneys advanced. If such an argument should be made it would require express language in the contract to uphold it. When the defendant did, from February to April on thirty-three of the carloads, enter a charge for commission based on the sale at destination without including any freight, the defendant went far by its own act in construing its contract adversely to the contention it now makes. [1] We think it was correct in the construction which it then placed on its contract, and

that it is incorrect in the claim which it is making at this time. The contract provides a commission of "20% of the net f. o. b. destination sales." The commission is to be based on sales. It is to be based on destination sales. Again, not gross sales, but net sales, and, furthermore, sales free on board. Bearing each one of these calls of the contract in mind, it is patent that cartage at the point of destination cannot possibly be considered because cartage can commence only after the goods leave the car and when the goods have ceased to be "on board." What we have said regarding cartage applies to handling, insurance, demurrage, brokerage, and every other item that was incurred *after a sale had been made.* By the terms of the contract the appellant became the broker of the grower for the purpose of negotiating a sale; but the plaintiff did not specifically authorize the defendant to delegate its authority at the plaintiffs' expense. Before a sale was made, and down to the time that the car arrived at its point of destination, under the clear terms of the contract, the respondent would be liable for insurance, icing, demurrage, and detention en route or at the point of destination. When a sale had been made deducting those expenses from the sales price and deducting the freight, we have arrived at a figure which complies with every call of the contract "net f. o. b. destination sale," and, on this amount so ascertained, the appellant was entitled to compute its commission of twenty per cent. To such an interpretation the appellant replies that "we have construed the words as though they read, 20% of the net f. o. b. shipping point sales." This is manifestly not so. That wording would indicate that the parties intended that the burden would rest on the appellant of paying at its own expense the freight, and all handling, insurance, icing, demurrage, and detention charges which might be incurred after the car left the point of shipment. Moreover, to talk of the subject of sales at shipping point is to ignore the word "net" entirely; that word ceases to have the meaning "net" or to have the meaning "gross," or any other meaning. It is in effect stricken out of the contract. When the clause in question was being argued in the trial court, and after counsel had cited authorities and argued the matter, the trial court remarked, " . . . I think it would mean exactly the same reading 20% of the net sales f. o. b.

destination.'' In this statement we think the trial court was entirely correct and that it did not misconstrue the contract.

The appellant claims that the trial court erred in not allowing it to introduce oral testimony. The proceedings were as follows:

''Mr. Rickwell: . . . If the court is in any doubt as to the interpretation *f. o. b. destination sales,* and if the court is of the opinion that the plaintiffs were in any doubt as to the meaning of *f. o. b. destination sales,* we will ask them what they understood and we will *put on witnesses to show that they understood it as we understood it.* [Italics ours.]

''The Court: I do not think there is any necessity to introduce evidence on that point; . . . ''

The specific offer was rightly refused. If the appellant had some other matters to present, it should have made an offer which clearly indicated the scope of the offer.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1922.

All the Justices concurred.